Our first case this morning is number 151330, TruePosition Inc. v. Polaris Wireless, Inc. And before we get started with the actual argument, you no doubt are familiar with the MCM case, which was decided last week. And the question is, is there anything left to the constitutional issue here after that decision? Good morning, I'm Michael Bonnella from TruePosition. We're not pressing that argument. Our argument was much more limited than the argument they made, but we're not pressing that argument unless the court wants to hear about it. Okay, so I think we don't need to hear about it, and that means I think we don't need to hear from the PTO as well, unless the PTO feels a crying need to say something. No? Okay. The PTO yields back all of its time. All right, thank you. Mr. Bonnella. Good morning, Your Honor, Honors. With respect to the Zell Reference, I think it presents a very interesting legal question for us, and that's how far can we go when we read a reference for anticipation? This Court's longstanding legal standards say we have expressed disclosures for anticipation, and we have inherent disclosures. Inherency is not an issue here. It wasn't raised, wasn't relied on. So the question, then, is how far can we go when we're reading a reference for an expressed disclosure? And here, the PTAB on page A30 said that relied on a person of skill in the art would understand and make a connection between two things in Zell, a sought element and a predetermined criteria, neither of which have an expressed definition, if you will. So the question is how far can we go in reading this Zell Reference? This Court's precedence says for express, it has to be there, and you cannot add to a reference based upon another reference or based upon a person's skill in the art. You can't fill in the gaps. Like in the DACO case, there was a hose, and you couldn't fill in the gap and say the hose was polymeric. You can't do that. And that's where the PTAB, I think, went afoul, because in this case, there's a predetermined criteria and a sought element referenced in Zell. Neither of which have a definition. I think we could all say there's no definition. They say the predetermined criteria are this or the sought element are that. So the PTAB tried to make a connection between those two statements and other parts of Zell. And there is no definition, and we can't fill in the gaps. But even if we were to look at Zell in its total and say, well, what is in its four corners? So this is basically a substantial evidence question? For the most part, yes, Your Honor. Why wasn't there substantial evidence to support what the board did? Because if you look at Zell in its four corners, it starts by saying there's a reconstruction process. We're pulling all the communications down from the link. And that reconstruction process is to enable Zell to find these power level measurements so it can do a location. It doesn't exactly, when it says the reconstruction process, it's a filtering process. And that's on A944. On A952, it gives you a little more disclosure of that. And it says you're going to isolate the signals. You're going to save the data. And it says there's a sought element. But it doesn't say what it is. Then we turn back to A963 and 964. It starts talking about the reconstruction process in more detail. And it says what we're looking for here are base station identifiers. What we're looking for here are frequency information. 964 says the time slot, the channel information. So now if we put these four corners together and say, is there a disclosure of the sought element being a predetermined mobile origination or termination transaction, or MSID, or dial digit trigger, it's not there. What's actually there is it's... What force do you attribute to the statement that appears even earlier in the Zell reference, right, at the beginning, in which Zell talks about filtering said data on the basis of predetermined criteria, which is the very phrase that is in dispute in the patent. Correct. Why doesn't that tell us something about what Zell's filtering is focusing on? It doesn't tell us what those criteria are. But it talks about predetermined criteria. Yes. And then later it has a number of elements that it describes. Why isn't this telling us that the filtering in Zell is the same kind of selection that is being done in the patent? Okay. So in the communications world, there are lots and lots of different types of messages and lots and lots of different types of data. So when you say we're reconstructing the communications based on predetermined criteria, what criteria? It doesn't say the criteria. Below that it says, do we have enough base stations? Is that the criteria on the same page? It says, do we have enough base stations? That's the first thing it says. Then the next thing it says, back when it actually describes its reconstruction process at A963, 964, it says, do we have the base station identifiers? Because what Zell wants to do is find all these communications, reconstruct them off the link, and then try to find the power level measurements. So in 964 it says, what we're going to do is we're going to look for the base station identifiers, then we're going to look for the time slot, we're going to look for the channel information, because they're trying to pull this and put these communications back together. We're not saying, in our claim, we're saying we're looking for very specific information. We're going to predefine a mobile origination transaction, a very specific type of transaction, or predefine a mobile termination transaction, a very specific type of transaction. And we're going to predefine a trigger that's associated with those transactions. To say on Zell in 944 it says predetermined criteria, I don't think there's any way to get from that word predetermined criteria to the very specific things that we're talking about. What do you think Zell means when it talks about filtering according to predetermined criteria? I think Zell means exactly what he says on 963 and 964 when he says, because he says that's the reconstruction process. And then if you go to 963 to 964 he explains that process. And he says you need to have a certain number of base stations. You need to have the channel frequency. Because what he's talking about is pulling data. You have to explain to me why that is a type of filtering based on predetermined criteria. I'm not making the connection. So, for example, he says I want to... I don't mind this notion of predetermined criteria. Right. So he wants to say, do I have the right base station for this communication? So the predetermined criteria, there's all these different base stations. They have certain numbers that are associated with them. So you say, do I have that base station? Does my information match? I'm looking for certain communication by the time slot, it says. Do I have that time slot? That's a slot within the communication. Do I have that time slot? That's on 964, I believe. And so he says, do I have that frequency? He's not saying I'm going to define a predetermined criteria. I want to look for a mobile origination transaction. And involved with that, I want to look for an MSID. That's not what he says. So your contention is that the predetermined criteria there don't relate to characteristics of the mobile phone or the transmission? They don't... You don't predefine the transactions that we're talking about. They're not... The predetermined criteria could be the base station and the number of base stations, the base station identifier. Those are things Zell references, not the mobile origination or termination transactions, as a predefinition to compare to the monitored data. Well, to go back again to 942 to 943, we're talking here, Zell, about recording signaling data, so he's specifically identifying data, and then filtering said data, which is signaling data. Correct. So according to predetermined criteria, that sounds like it's focusing on the data, right? But the question is more, what is the predetermined criteria, right? In our claim, we're saying we're looking, we're going to predefine a certain type of transaction. There's all these different types of transactions, handover, location update, mobile origination, mobile termination. They go on and on and on. But we're saying look for two specific types in Claim 113, mobile origination and mobile termination. We're going to predefine that, and we give you the GSM standards specifications for that in Column 23 of the patent. And then we say if you want to look for a specific trigger, and we explain the examples of those, like the CMSID or the dialed digit, and we say we're going to predefine those things, and then we're going to compare that to the data. When Zell says predetermined criteria, he never says well I want to look for those specific transactions that you're talking about and those specific triggers that you're talking about. Zell doesn't say that. He says predetermined criteria, I'm going to look in the data. So we say what predetermined criteria are you talking about? And when you go look through Zell and you read the reconstruction process in detail at 963, 964, he doesn't say anything about looking for a mobile origination or termination transaction as a predefinition. He says I'm going to look for a time slot, I'm going to look for the number of base stations, I'm going to look for a base station identifier. He's looking for location, right? Ultimately, Zell is trying to get a location, and he's trying to find, and you say what's the predetermined criteria? What he's actually trying to find is a power level measurement, and power level measurements are in a communication signal called a measurement report. A measurement report is not a mobile origination transaction, and it's not a mobile termination transaction. A measurement report is not an MSID, and it's not a dialed digit trigger. So that's ultimately what Zell is looking for. So when he says sought data on page 952, or the predetermined criteria on 944, neither of which have an expressed definition, the more likely thing is he's looking for the power level measurements. You didn't put in no declaration to support what you're saying, right? No, we put in a declaration of Dr. Gottesman that said the sought element and the predetermined criteria were not defined, and I believe he said the most likely thing was the power level measurements. It's his best reading of it. I'm not sure that answers my question. You've been making an argument about Zell. Is that supported by an expert declaration? I believe we said it's not disclosed in the sought element and the predetermined criteria are not disclosed. Who said? Dr. Gottesman. Where did he say that? In his declaration that was submitted. Where is it? I do not have that cite off the top of my head. You're supposed to make arguments. You're supposed to come here and know where they're supported. But he did say in his declaration that the sought element and the predetermined criteria are not disclosed, and that he was very consistent with that. You're talking about A9-115. Yeah. A. It starts at 9-1-1-7, the actual declaration. 9-1-1-7. Volume 3. That's it. 9-1-1-5, Your Honor? 9-1-1-7 is where he begins his actual statement. That's the only one in the record. That's it. I believe around 9-1-4-5, correct? He says, the sought data is stored. One skill in the arbitrary does not describe that the sought element is determined. It doesn't disclose the transactions that we're discussing. Where does he talk about signal strength? That seems to be the core of your argument. Page A9-1-44. I find Zell's main overall goal is to locate or create a location snapshot using power level and quality measurements. Zell generally refers to a software model and a statistical model as a pre-location phase. The pre-location uses main parameters, reception levels, the transmission power levels of the base station and mobile stations, and the reception quality of the MSBTS signals. Zell describes the overall statistical analysis using this data for location as well as using it in time advance. That's the signal strength? Right. Geez. I was a radio teletype net supervisor in the Army. I didn't read it that way, but go figure. The power level measurements essentially go to the signal strength. And that's what Zell's looking for, these power level measurements, the power level of the phone. The power level of the phone allows you to do location, if you know the power level of the phone, through statistical analysis. Okay. Well, you're into your rebuttal. Thank you, Your Honors. We'll give you two minutes. Your Honors, this is really a substantial evidence question. There's adequate substantial evidence to support the Board's decision, particularly on this question of whether or not the filtering relates to the predetermined criteria and sought elements. Dr. Bhattacharya's second declaration at K2940, paragraphs 18 through 20. GSM telecommunication systems are a standard type of telecommunication system. They're manufactured by a number of manufacturers. They're very, very complex. The typical system comprises an area the size of Washington, D.C., or a small state. They comprise many boxes. You've obviously seen the names of the boxes in the briefs, base stations that go by various technical names, mobile switching centers, cell phones that go by many names, mobile station and user equipment. The links, the cabling between these boxes is standardized by various standard organizations, and it is standardized so that carriers such as Verizon or AT&T can mix and match equipment from different vendors, from an Ericsson or a Qualcomm, Huawei, Alcatel-Lucent. The signaling on the cables is standard. It's well known, and that is why the messages are the same in the Zelle reference, in Abidessa, in the Venice, and in the patented issue. They have to be in order to work. They have to be in order to work. Everybody knows these. There are documents to explain it. The problem that when the cellular systems were first developed in the early 80s... Help us with what he's saying. He's saying that there's a requirement for predetermined criteria in these claims, and that's not what Zelle is doing. Yet he concedes that Zelle is also trying to find location. Oh, yes. Help us understand what's going on here. Sure, sure. All of the predetermined criteria are the various criteria that a company might want to do locations on. For example, if you're a 911 operator, you might want to see every message that a cell phone originates, that's a mobile origination transaction, in which the dial digits are 911. That's a very common message. How do we know that from Zelle? How do we know that from Zelle? What in Zelle tells us that the predetermined criteria are the predetermined criteria that are in the patent? The exercise here is to say, does Zelle anticipate? Zelle anticipates if that's true, if it's necessary for that to be true. Why is it true? Zelle lists, like I believe almost all of the references do, that there's a laundry list of the 20 or 30 different kinds of messages that can go back and forth on the AVIS link. A manufacturer can use any one of those transactions that it chooses to find a particular transaction. Where's that laundry list in the record? I'm sorry? Where's that laundry list? Give us a page reference. Are you talking about the service signals on page 148 to 149? Yes, I'm sorry. Thank you, you're right. The laundry list is the service signals. It's called the service signals in Zelle. The service signals include a number of things. They include the two that are of interest to the claims are mobile origination transactions, that's when the cell phone places a call, and mobile termination transactions. It sounds like it would be something having to do with the cell phone ending a call, but it's actually the cell phone receiving a call. That's all clear in the brief, but where in Zelle is the connection between those signals and the predetermined criteria used for location? That's what we're really focused on. That's the argument. I would argue that Dr. Bhattacharya's declaration would explain that a person of ordinary skill in the art... Bhattacharya says that is pertinent to that question. Just show us where he says it is. Yes, at 82940. Which volume is this? Which volume? Volume one? The volume of the joint appendix? Yes. I'm sorry, I don't know. Volume two, I guess. Okay. Yeah. Where does he say this? I mean, you know, both of you, this is a substantial evidence case. Don't you think we're going to ask you questions about where the evidence is? Is it in paragraph 20? Yes, I listed 20, 18 through 20. Zelle discusses that the data on the ABIS link complies with industry standards. A person of ordinary skill, who Dr. Gottesman says has ordinary programming skills, understands that filtering based on predetermined criteria means setting the predetermined criteria for filtering the data set. So you'd look for whatever it is you wanted to look. You'd look for the mobile origination transactions. You'd look for the incoming calls. You'd look for the mobile termination transactions based on caller ID. A person of ordinary skill would understand that once they had access to those messages, they could use the messages in any way they wanted. Okay. Well, here he says that filtering involves setting predetermined criteria. Is the contention here that the predetermined criteria in Zelle and in the patent are different? The predetermined criteria or the sought signals are a part of the service signals, are the service signals that you would want in any particular query. And Zelle is looking for them and the 299 patent is looking for them? Yes. My picture of this is sort of a Venn diagram. That is, Zelle has everything including those, but there's more. That is more than the claims, you're right. Zelle teaches a superset of the messages recited in the claim. If there are no further questions, I'll yield my time. Okay, thank you. Thank you. Thank you. There's a couple of points. The paragraph 20 on 829.40 has no site to Zelle. That's just relied on from the declaration from Dr. Bacikaria. There's no actual site to Zelle in that paragraph. It's just pretty much a statement. Paragraph 20? Right. What's the first word in paragraph 20? Zelle discusses the data on Avis. I'm sorry? You say there's no actual site to Zelle? No, it's a reference to Zelle. It says, Zelle discusses the data on the Avis link complies with industry standards. Well, that's true. A person of ordinary skill, who Dr. Gosman says has programming skills, understands that filtering based on predetermined criteria means setting predetermined criteria for filtering the data set based on predetermined criteria. And you say that's not true? Well, I'm saying that paragraph doesn't say anything about defining specifically, as we say, local origination. Right. Right. An expert's entitled to an expert opinion, right? Absolutely. But he's not saying, he doesn't say. What about paragraph 18? Which is the basis for his opinion. It describes filtering this data includes setting the predetermined criteria. It consists of recording signaling data at the interface. It's recording signaling data at the interface. It doesn't say, it says filtering based on predetermined criteria. Paragraph 18 doesn't say anything about defining a predetermined criteria on the specific criteria that we said. And in Zelle itself, on A963, I believe it is, it says the missing information, 962 it says, this is to determine the reconstruction process with the predetermined criteria. It says the missing information is the following. Correspondence between different identifiers designating the same radio frequency. Grouping together of radio frequencies that are part of the same BTS. And correspondence between the identifier, the base station, and the frequencies. Those are different criteria. What do you say about the next two paragraphs of Dr. Bhattacharya's declaration, 21 and 22? Specifically, 21, in which he characterizes Zelle as detecting triggers specific to mobile origination and termination transactions. I'm sorry, do you have that page around? Yes, that's 2941. It's the next page after the one that you were reading from. He does say detecting triggers, but he doesn't cite to Zelle. So this is where you're adding to his disclosure. He has a citation to Zelle at the end of paragraph 21. He's listing that laundry list of service signals that you referred to earlier, that laundry list. So it's just a list of signals on the ABIS link. He said, here's all the stuff on the ABIS link. And then later they say, we're going to reconstruct the signals and we're going to look for a solid element predetermined criteria. It's not saying looking for this one or that one or this one or this specific thing within all that data. That's that Venn diagram thing I said before. There's a big one, and it overlaps in some instances with the other pack. No, I don't see it that way, Your Honor, because they're pulling the data in from the ABIS link. I have data now. The question is, electronically we have the data. What is it I'm looking for within that data? Am I looking for this transaction with this trigger to cause a location, or am I looking for something else? And what Zelle says in missing information, he's looking for something else. He's predefining something else. He's not predefining a transaction or a trigger and looking for those things as we claimed it. Okay. Thank you, Mr. Van Allen. Thank you, counsel. The case is submitted, and that brings us to the next case, which is 15-1643. Again, true position, Inc. versus Polaris Wireless. Mr. Van Allen.